IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FIRST LOOK MEDIA WORKS, INC.
114 Fifth Avenue
18th Floor
New York, NY  10011

and

LEE FANG,
605 Mission Street
7th Floor
San Francisco, CA  94105

                Plaintiffs,

    v.

U.S. AGENCY FOR GLOBAL MEDIA,
330 Independence Avenue, SW
Washington, DC  20237

                Defendant.

Case No.

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF FOR
VIOLATION OF THE FREEDOM OF
INFORMATION ACT, 5 U.S.C. § 552
et seq.**

Plaintiffs First Look Media Works, Inc., publisher of *The Intercept*, and Lee Fang (collectively, "The Intercept"), for its complaint seeking a declaratory judgment, an injunction, costs, and attorneys' fees against Defendant U.S. Agency for Global Media ("USAGM" or "Defendant"), by their undersigned attorneys, allege as follows:

## INTRODUCTION

1.      The Intercept brings this action against USAGM to compel its compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").

2.      On October 7, 2020, The Intercept submitted a FOIA request to USAGM seeking records related to the agency's recent termination or suspension of a number of foreign

journalists employed by USAGM for service at Voice of America (VOA).[1]  A true and correct copy of the FOIA request is attached as Exhibit A.  Publicly, USAGM and its recently-confirmed Chief Executive Officer, Michael Pack, justified these employment actions on the basis of unsubstantiated national security concerns.

3.      The Intercept's FOIA request sought records that would reveal whether the agency had legitimate facts to substantiate its asserted national security concerns, or whether the national security allegations merely served as pretext for a political decision to fire or suspend foreign journalists.  Accordingly, The Intercept requested records pertaining to the procedures and standards employed by the agency in vetting the security background of VOA's foreign journalists, the policies underlying the relevant firing and suspension decisions, and whether Mr. Pack and USAGM acted with the approval or at the behest of President Trump, White House staff, or President Trump's former advisor, Stephen Bannon.

4.      Through its records request, The Intercept aims to shed light on the nature of, and motivations underlying, USAGM's actions.  In particular, The Intercept's request seeks to uncover whether these actions reflect a xenophobic view of the foreign journalists who have long formed the backbone of VOA's journalistic staff, are part of a broader plan by President Trump and Mr. Pack to politicize the VOA, violate the journalists' First Amendment rights and rights to equal protection and due process, and risk undermining VOA's worldwide reputation as a source of objective, dependable, and trustworthy reporting.  These are matters of significant public interest and concern.

5.      Defendant never responded to The Intercept's request.  The Intercept therefore respectfully requests that the Court compel USAGM to promptly comply with FOIA and produce the requested records.

---

[1] USAGM is the parent agency, and oversees operation, of Voice of America, Radio Free Europe/Radio Liberty, Radio Free Asia, Office of Cuba Broadcasting, Middle East Broadcasting Networks, and the Open Technology Fund.  *See* https://www.usagm.gov/networks/.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7.      Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

8.      Plaintiff First Look Media Works, Inc. ("First Look Media") is a not-for-profit organization headquartered in New York, New York.  First Look Media is dedicated to furthering the public interest by standing up for press freedoms and fostering fearless, adversarial journalism.  It publishes *The Intercept*, an award-winning, nationally recognized news publication with a reputation for holding power to account.  *The Intercept*'s in-depth investigations focus on politics, war, surveillance, corruption, the environment, technology, criminal justice, and the media.  It gives its journalists the editorial freedom and legal support to expose corruption and injustice.

9.      Plaintiff Lee Fang is a resident and citizen of the state of California.  He is an investigative reporter employed by *The Intercept*.  His reporting focuses on policy, government, and political corruption.  He works for *The Intercept* from an office in San Francisco, California.

10.     Defendant U.S. Agency for Global Media ("USAGM") is a federal agency within the meaning of FOIA, *see* 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.

11.     USAGM has possession, custody and control of records sought by The Intercept through its FOIA request to the agency.

## FACTUAL ALLEGATIONS

### *The Mission of VOA*

12.     Voice of America is the largest U.S. international broadcaster, providing news and information in 47 languages, across digital, mobile, television and radio platforms, to a

weekly audience of more than 280 million people.[2]  Since its creation in 1942 to counter Nazi propaganda, VOA has delivered accurate and objective reporting primarily to areas of the world without other sources of credible news coverage.  Journalist William Harlan Hale emphasized VOA's principle of objectivity to audiences of the first-ever VOA broadcast, saying that "[t]he news may be good for us.  The news may be bad.  But we shall tell you the truth."[3]  Nearly eighty years later, that mission—and VOA's efforts to provide credible news to areas of the world that would not otherwise have it—remains largely unchanged.[4]

13.     VOA's international credibility stems from a legislatively mandated "firewall" that prohibits government interference with VOA's operations, guaranteeing editorial freedom to report the news fairly and accurately.  This editorial freedom is a cornerstone of press freedom. The First Amendment itself is a firewall, ensuring that news organizations are editorially independent from the government by banning the government's involvement with journalistic and editorial decision-making.  As the Supreme Court wrote in its landmark decision in *Miami Herald Publishing Co. v. Tornillo*, the First Amendment bars government "intrusion into the function of editors[,]" such as interference with content selection, the "treatment of public issues and public officials[,]" and other "exercise[s] of editorial control and judgement."  418 U.S. 241, 257-58 (1974).  Federal law requires that government-funded news outlets like VOA maintain this firewall.

14.     Without a functional firewall—a cornerstone of press freedom—VOA cannot maintain its credibility with audiences around the world who rely on VOA both as a news source and as a model of free, independent, and professional journalism.  As former VOA director Amanda Bennett told the Foreign Affairs Committee of the U.S. Congress at a recent hearing, the firewall's protection from government interference is "the single most important thing that

---

[2] *Voice of America Public Relations*, "Mission and Values" (last accessed Nov. 13, 2020) https://www.insidevoa.com/p/5831.html.
[3] *BBC News*, "Why Voice of America matters outside US" (Dec. 15, 2016).
[4] *Id.*

distinguishes government-funded independent news from the propaganda that many of our authoritarian regimes that we covered practice."[5]

15.     VOA relies on skilled foreign journalists to provide news coverage around the world.  These journalists bring to VOA valuable language skills, intimate knowledge of the politics, economies, and cultures of the regions they each cover, and a strong belief in the importance of press freedom.  These attributes have made foreign journalists crucial to VOA's mission, as an international broadcaster, to provide insightful and objective coverage of news around the world, including in countries that do not have a free or robust press.

### The Politicization of VOA

16.     The U.S. Senate confirmed Michael Pack—a conservative filmmaker reported to have close ties to former Breitbart News executive and White House advisor Stephen Bannon—as Chief Executive Officer of USAGM on June 4, 2020.

17.     Shortly after his confirmation, Mr. Pack ordered VOA and USAGM to terminate or suspend the employment of numerous foreign journalists.

18.     Mr. Pack publicly justified these firings by making unsubstantiated assertions that VOA's foreign journalists, as a group, were less trustworthy than U.S. citizens.  Mr. Pack has openly demeaned foreign journalists on the basis of their alienage, claiming that he is worried that, since "be[ing] a journalist is a great cover for a spy," some of the foreign journalists might try to "penetrate[]" USAGM and he needs "to make sure that doesn't happen."[6]

19.     Mr. Pack's alleged national security concerns are likely mere pretext for politically-motivated decisions to suspend or fire foreign journalists.  These journalists' positions did not involve matters of national security, nor did they require the handling of classified

---

[5] House Foreign Affairs Committee, Testimony of Amanda Bennett (Sept. 24, 2020), https://www.c-span.org/video/?476189-1/house-hearing-voice-america-trump-administration.
[6] Interview by Chris Bedford, Senior Editor, Federalist, with Michael Pack, CEO, USAGM (Aug. 27, 2020), https://thefederalist.com/2020/09/03/npr-manipulates-federalist-interview-with-voa-executive-on-behalf-ofgovernment-employees-opposing-reform/.

information.  All foreign journalists for VOA were required to successfully complete a thorough background security clearance investigation in order to be hired.

20.     Echoing the Trump Administration, Mr. Pack has vaguely claimed to be on a mission to remake VOA and its sister networks by "draining the swamp," and has exhibited animus against foreign nationals living in the U.S.

21.     In a McCarthy-esque manner, strikingly absent has been any process through which the foreign journalists have been informed of any specific allegations lodged against them, or of the facts or law underlying those allegations, depriving them of meaningful notice.  The agency likewise has failed to provide a chance to be heard before or shortly after suspending or terminating the journalists' jobs.

22.     Mr. Pack's and USAGM's purge of foreign journalists is in line with the Administration's attacks on the independence of VOA and its broader aim to breach the firewall and transform VOA into a vehicle for pro-Administration propaganda.  President Trump has rained down criticism on VOA, for example, for perceived slights to the Administration in its reporting on China's response to the Coronavirus pandemic, and for a video report by VOA's Urdu language service that focused on Democratic presidential nominee Joe Biden's outreach to Muslim voters.  The Administration wrote in an official statement released on April 10, 2020 that "VOA too often speaks for America's adversaries—not its citizens[]" and "promoting propaganda[.]"[7]

23.     Mr. Pack's assault on the independence of VOA journalism has not been limited to the network's foreign journalists.  Since taking over USAGM leadership in June, he has purged all of the top management and boards of the broadcast networks and other organizations under his and USAGM's control, including Radio Free Europe/Radio Liberty, Radio Free Asia, Office of Cuba Broadcasting, and the Open Technology Fund, replacing them with political

---

[7] "Amid a Pandemic, Voice of America Spends Your Money to Promote Foreign Propaganda", https://www.whitehouse.gov/articles/amid-a-pandemic-voice-of-america-spends-your-money-to-promote-foreign-propaganda/.

appointees notable for their lack of experience in journalism or the media.  In addition, he has frozen spending, at times risking paralysis of the news organizations, and insisted on insertion of pro-administration commentary in VOA reporting, in violation of the agency's statutory firewall.

24.     Mr. Pack's actions have drawn strong bipartisan rebuke from Congress.  For example, on July 1, 2020, seven U.S. senators—including four Republicans who voted in favor of Mr. Pack's controversial confirmation—sent a letter to Mr. Pack expressing concern about the dismissals and possible politicization of USAGM.[8]  "These actions, which came without any consultation with Congress, let alone notification, raise serious questions about the future of USAGM under your leadership," they wrote.  Subsequently, the House Committee on Foreign Affairs conducted an oversight hearing concerning Mr. Pack's management, and the politicization of, USAGM, and issued a subpoena to him to testify before the Committee. Showing his disdain for both congressional and public oversight, Mr. Pack defied the subpoena.[9]

25.     Mr. Pack's and USAGM's actions also have formed the factual basis of several lawsuits.[10]  One of those, brought in this District by executives of USAGM and VOA who were placed on administrative leave after making protected disclosures concerning alleged misconduct by Mr. Pack and USAGM, challenged as unconstitutional Mr. Pack's attempted breach of the statutory firewall.  On November 20, 2020, Chief Judge Howell entered an order granting in part the plaintiffs' motion for preliminary injunction, enjoining Mr. Pack and USAGM from taking or influencing personnel actions against individual journalists or editors, attempting to influence

---

[8] Letter to Michael Pack (July 1, 2020), available at https://fm.cnbc.com/applications/cnbc.com/resources/editorialfiles/2020/07/01/July1_LTR_to_Michael_Pack.pdf.

[9] House Foreign Affairs Committee, *Oversight of the United States Agency for Global Media and U.S. International Broadcasting Efforts* (Sept. 24, 2020). *See Despite bipartisan concerns, Global Media Agency CEO ignores congressional subpoena - YouTube* (PBS News Hour, Sept. 24, 2020); *U.S. broadcasting chief defies congressional subpoena, skips hearing* (Reuters, Sept. 24, 2020).

[10] *See Open Technology Fund v. Pack*, __ F. Supp. 3d ___, 2020 WL 3605935 (D.D.C. July 2, 2020); *Turner v. U.S. Agency for Global Media*, No. 20-cv-2885 (D.D.C. filed Oct. 9, 2020) (hereinafter *Turner*).

content through communications with individual journalists or editors, and investigating purported breaches of journalistic ethics.[11]

26.     Apart from the harm these actions may inflict on VOA, the United States, and audiences around the world that depend on VOA for objective and unbiased news and information, USAGM's and Mr. Pack's actions have exposed VOA's foreign journalists to both actual and potential harm.  Due to VOA's termination or suspension of their employment and its refusal to renew their J-1 visas, some of these foreign journalists have been forced to leave the United States and return to their home countries, and others soon will also be at risk of expulsion.

27.     Expelled journalists, particularly those who hail from countries with repressive political regimes that have been the subject of critical reporting by VOA journalists, are likely to face retribution upon return to their home countries.  In the past, VOA journalists have been harassed and detained in China,[12] charged with treason in Ethiopia,[13] imprisoned in Eritrea[14] and Vietnam,[15] and killed on assignment in Somalia.[16]  VOA reporters forced to leave the U.S. pursuant to Mr. Pack's decisions to terminate foreign journalists are likely to face similar dangers.

### The Intercept's FOIA Request

28.     On October 7, 2020, The Intercept submitted a FOIA request, in which it sought disclosure of all records relating to:

---

[11] *See Turner*, Order granting in part plaintiffs' motion for preliminary injunction (Nov. 20, 2020).

[12] *Committee to Protect Journalists*, "Chinese Police Harass and Briefly Detain VOA Journalist" (Aug. 23, 2017), https://cpj.org/2017/08/chinese-police-harass-and-briefly-detain-voa-journ/.

[13] *Committee to Protect Journalists*, "Court Drops Changes Against Five Voice of America Journalists" (Mar. 22, 2006), https://cpj.org/2006/03/court-drops-charges-against-five-voice-of-america/.

[14] *Committee to Protect Journalists*, "Aklilu Solomon" (July 8, 2003), https://cpj.org/data/people/aklilu-solomon/.

[15] *Committee to Protect Journalists*, "Le Anh Hung" (July 5, 2018), https://cpj.org/data/people/le-anh-hung/.

[16] *Committee to Protect Journalists,* "Ali Nur Siad" (Oct. 14, 2017), https://cpj.org/data/people/ali-nur-siad/.

1.      Whether persons hired by USAGM or Voice of America (VOA) in journalist or broadcasting positions should be hired or classified as personal service contractors, excepted service contractors, full time employees (FTEs), or another status.

2.      Whether to renew, extend or terminate the personal service contracts or excepted service contracts of any one or more foreign journalists employed by, or performing services for, VOA or USAGM, or reasons or considerations relating thereto, including the consequences to USAGM, VOA, the United States or the journalists of terminating, or not renewing or extending, such contracts.

3.      Whether to renew or extend, or support the renewal or extension of, visas or any other immigration status (including but not limited to J-1 visas) for foreign journalists employed by or performing services for VOA or USAGM, or reasons or considerations relating thereto, including the consequences to USAGM, VOA, the United States or the journalists of not renewing or extending, or supporting the renewal or extension of, such visas.

4.      Whether to replace foreign journalists performing services for VOA or USAGM with U.S. citizens, and the reasons or considerations relating thereto.

5.      USAGM's and/or VOA's consideration of whether to conduct a case-by-case review of the renewal or extension of the J-1 visas of foreign journalists employed by VOA and/or USAGM, or security risks posed by such persons.

6.      USAGM's and/or VOA's conduct of case-by-case reviews of whether to renew or extend the J-1 visas of foreign journalists employed by VOA and USAGM, or security risks posed by such persons.

7.      Security failures or concerns relating to foreign journalists employed by VOA or USAGM, including without limitation (i) the adequacy of security or background checks and clearances performed concerning foreign journalists, (ii) how such failures or concerns have affected USAGM or VOA, or compromised the ability of USAGM or VOA to fulfill its respective mission, and (iii) whether, and if so how, such failures or concerns have impacted U.S. national security or foreign policy.

8.      Processes, policies, standards and criteria governing or pertaining to security and background checks and investigations conducted regarding USAGM and VOA employees, personal service contractors, and excepted service appointments, including the level of scrutiny and review to be applied to different classes of employees and contractors and the reasons for any such differences.

9.      Documents comprising, reflecting or relating to communications between Michael Pack or any other employee of USAGM or VOA, on the one hand, and Steve Bannon, President Donald J. Trump, or any member or representative of the White House staff concerning or relating to (i) the employment, or use of the

services of, foreign journalists by VOA or USAGM, (ii) the editorial policies or practices of VOA, (iii) VOA's coverage of any news item(s) or event(s), including without limitation the Covid 19 pandemic, the 2020 presidential campaign or any candidate for President of the United States, or VOA's Urdu news service, and (iv) the termination, replacement or appointment of upper management employees of VOA and/or USAGM.

10.     All policies governing, and guidance to USAGM, VOA, RFR/RL, RFA, MEB and OCB employees and contractors relating to, conflicts of interest, and all communications (including emails) regarding the revision or update of such policies and/or guidance that resulted in issuance of the Memorandum from Michael Pack to The Voice of America et al. on October 2, 2020 (CEO Policy Memo – Guidance on Conflicts of Interest).

*See* Ex. A.

29.     The Intercept requested expedited processing of its request.  In support of that request, The Intercept noted that its request:

> bear[s] on the imminent termination of employment, expiration of authorization to remain in the United States, and expulsion from the United States, of foreign journalists employed by USAGM and/or VOA, and the legality of the actions, or inaction, of USAGM and VOA.  These records are crucial to the public's understanding of the bases for such actions or inaction.  Delay in production of these documents could result in the expulsion from the United States of foreign journalists who will be forced to return to countries where, because of the service they have rendered to VOA and USAGM, they may be subjected to harassment, retaliation, imprisonment or the infliction of serious harm.

30.     The Intercept also requested a waiver of document search, review and duplication fees associated with processing records for its request.  *See id.* at 4.

### ***USAGM Failure to Respond***

31.     USAGM has not responded to The Intercept's FOIA request.  Nor has it provided any explanation for its failure to respond.

*Exhaustion of Administrative Remedies*

32.     Because Defendant has "fail[ed] to comply with the applicable time limit provisions" of FOIA, The Intercept is "deemed to have exhausted [its] administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i).[17]

## CLAIMS FOR RELIEF

### (Count One)

### Violation of FOIA, 5 U.S.C. § 552

### USAGM's Failure to Respond to The Intercept's Requests Within 20 Days

33.     The Intercept repeats and incorporates by reference the foregoing paragraphs as if fully set forth herein.

34.     By failing to respond to The Intercept's requests within the statutorily mandated time period, Defendant USAGM has violated FOIA, including but not limited to its duties to conduct a reasonable search for responsive records, to take reasonable steps to release all reasonably segregable nonexempt information, and to not withhold responsive records.

35.     The Intercept is being irreparably harmed by USAGM's violation of FOIA and will continue to be irreparably harmed unless USAGM is compelled to promptly comply with FOIA.

## REQUESTED RELIEF

WHEREFORE, The Intercept respectfully requests that the Court:

1.     Declare that USAGM has wrongfully withheld records from The Intercept in violation of the Freedom of Information Act;

---

[17] Plaintiff's counsel, Burt Braverman, even exceeded his statutory obligations and emailed FOIA Liaison Daniel Rosenholtz on November 10, 2020 seeking confirmation that USAGM received The Intercept's October 7, 2020 request.  Neither Mr. Rosenholtz nor USAGM responded to this email.  On November 10, 2020, Mr. Fang called USAGM, seeking confirmation that his FOIA request had been received.  He spoke with Mr. Rosenholtz, who said he did not know but would inquire.  Mr. Rosenholtz called Mr. Fang on November 19 to tell him only that the FOIA request had been received.  Plaintiffs have received no further response from USAGM regarding their FOIA request.

2.      Order USAGM to conduct a search for all records responsive to The Intercept's FOIA request, employing search methods reasonably likely to lead to discovery of records responsive to The Intercept's FOIA request;

3.      Order USAGM to promptly produce, by a date certain, all nonexempt records and portions of records responsive to The Intercept's FOIA request, and a *Vaughn* index of each responsive record or portion of record withheld under a claim of exemption;

4.      Enjoin USAGM from continuing to withhold any nonexempt record responsive to The Intercept's FOIA request;

5.      Order USAGM to grant Plaintiff's request for a fee waiver;

6.      Award to The Intercept attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

7.      Grant The Intercept such other relief as the Court deems just and proper.


DATED: December 1, 2020            Respectfully submitted,

                                   DAVIS WRIGHT TREMAINE LLP


                                   By: /s/ Burt Braverman
                                        Burt Braverman (DC Bar No. 178376)
                                        1301 K Street, N.W.
                                        Suite 500 East
                                        Washington, DC  20005
                                        (202) 973-4210
                                        burtbraverman@dwt.com

                                        Thomas R. Burke
                                        505 Montgomery Street
                                        Suite 800
                                        San Francisco, CA  94111
                                        (415) 276-6552
                                        thomasburke@dwt.com

                                        Attorneys for Plaintiffs
                                        FIRST LOOK MEDIA WORKS, INC. and
                                        LEE FANG