UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FIRST LOOK INSTITUTE, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. AGENCY FOR GLOBAL MEDIA, <br><br> Defendant. | Civil Action No. 20-3499 (TJK) |

**SUPPLEMENTAL DECLARATION OF BURT BRAVERMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS**

I, Burt Braverman, declare as follows pursuant to 28 U.S.C. § 1746:

1.      I am a partner of the law firm Davis Wright Tremaine LLP ("DWT"), attorneys for Plaintiffs First Look Institute, Inc. and Lee Fang ("Plaintiffs") in the captioned action against Defendant United States Agency for Global Media ("USAGM"). I submit this supplemental declaration in further support of Plaintiffs' Motion for an Award of Attorneys' Fees and Costs. The facts set forth herein are with my personal knowledge. If called upon, I could and would testify competently thereto.

***Representation of VOA Journalists***

2.      Beginning in September 2020, I, along with other colleagues at my firm not involved in the instant Freedom of Information Act ("FOIA") litigation, represented nine foreign-national Voice of America ("VOA") journalists (the "Journalists") in connection with USAGM's termination of their employment at VOA. Our representation included the filing of employment discrimination actions against USAGM before the Equal Employment Opportunity Commission: the first informal EEO complaint was filed on September 14, 2020, and the first formal complaint

was filed on December 1, 2020, the last informal complaint was filed on March 28, 2022, and the last formal complaint was filed on July 8, 2022.  Companion breach of contract cases against USAGM, based on the Contracts Disputes Act ("CDA"), were filed in the Court of Federal Claims ("CFC") between August 18, 2021 and December 10, 2021.

3.  The EEOC cases alleged generally that USAGM and its CEO, Michael Pack, refused to take the necessary actions for renewal of the Journalists' J-1 visas or comparable immigration authorizations, which were conditions to the Journalists' right to remain in the United States and to their continued employment by USAGM.  The Journalists alleged that the actions taken against them by Michael Pack and USAGM, including fallacious allegations that they were potential spies, were pretextual and xenophobically motivated, based on each Journalist's national origin, and therefore were discriminatory in nature and a breach of the Journalists' respective employment contracts.  These actions were part of a broader purge undertaken by CEO Pack of members of VOA's professional staff in an effort to reshape VOA into a pro-Trump Administration news service, in derogation of VOA's long history of objectivity and the statutory "firewall" that was intended by Congress to shield VOA's journalistic independence from political intrusion.  These events drew significant public attention, including congressional inquiries and hearings, whistleblower complaints, inspector general review, lawsuits brought by other VOA employees, articles by major U.S. news publications, and FOIA requests in support of such activities.

***Representation in this FOIA Case***

4.  On October 7, 2020, I and two DWT colleagues not involved in the Journalists' litigation assisted *The Intercept* and Lee Fang in submitting a FOIA request to USAGM concerning the actions being taken by USAGM and Michael Pack, particularly with respect to the purge of

foreign journalists and other staff members by USAGM and the involvement of the White House in the attempted politicization of VOA.  *The Intercept*, published by Plaintiff First Look Institute, Inc., is an award-winning adversarial news service dedicated to holding the powerful accountable through in-depth investigations and analysis, with a focus on politics, corruption, and justice.  Lee Fang was an investigative journalist with *The Intercept* until his departure in March 2023.  My law firm has represented *The Intercept* in prior FOIA requests and lawsuits aimed at compelling federal agencies to disclose documents pertinent to investigations in support of potential publication of articles concerning unlawful or improper government conduct.  After waiting for approximately two months for USAGM to respond to their FOIA request, and receiving none, *The Intercept* and Mr. Fang commenced this lawsuit on December 1, 2020, to compel production of the requested records.

***There Is No Relationship between the EEOC and CFC Cases and this FOIA Case***

5. There was and is no connection between this case and the Journalists' EEOC and CFC cases, or the filing dates or sequence of the Journalists' EEOC and CFC actions and this lawsuit.  As reflected in paragraph 2 above, initiation of the Journalists' EEO cases preceded *The Intercept*'s submission of its FOIA request and long preceded the commencement of this FOIA lawsuit.  USAGM's recitation of incomplete and selective dates, to create an appearance of a relationship between the commencement of this litigation and the Journalists' EEOC and CFC cases, is incomplete and misleading.  Further, any coincidence in dates was attributable to the facts that (1) Michael Pack's tenure as CEO of USAGM was coming to an end with the inauguration in January 2021 of newly elected President Joe Biden; (2) substantial scrutiny was being paid by the public, Congress and the media to his actions while in office, in particular to the J-1 visa policy he enforced against foreign-national journalists who worked for VOA, and the effects of those

policies over the preceding months on USAGM, VOA, and individual journalists and staff members; (3) the VOA staff and journalists who were the victims of USAGM's and Mr. Pack's actions were seeking judicial or administrative relief as quickly as they could; and (4) *The Intercept* wanted to gain access to pertinent documents that would enable it to publish on these events as quickly as possible. The fact that the first of the nine formal EEOC complaints filed by the Journalists, and the complaint in this FOIA case, wound up being filed on the same day was pure coincidence.

6. Soon after the Journalists' discrimination cases were filed with the EEOC, the cases were put on a mediation track. Thereafter, the cases were assigned to a mediator and an Administrative Judge who presided over a very lengthy mediation that had approximately 35 sessions, some lasting all day, and lasted until late 2023. The focus of the mediation promptly turned to the injuries that each Journalist had suffered as a result of USAGM's discriminatory actions, and to the economic and remedial terms upon which each Journalist would be reinstated to her/his prior positions and compensated for the damages incurred as a result of Mr. Pack's and USAGM's actions. There was no litigation of liability and no submission of non-damages evidence in the EEOC (or the CFC) cases. Instead, USAGM, without admitting liability, agreed to mediate damages in each of the Journalists' cases. By agreement of the Journalists and USAGM, the CFC cases were stayed throughout the mediation. The mediation resulted in settlement of eight of the nine Journalists' EEOC and CFC cases, under which the Journalists received reinstatement, advancement, backpay and benefits, pecuniary damages, non-pecuniary damages, and correction of agency personnel files. Tthe EEOC and CFC cases of one Journalist remain pending.

7. The 16 cases I litigated on behalf of the Journalists, and this FOIA litigation, while arising from and focused on the actions of USAGM and Mr. Pack, are and have remained completely separate. The parties to the Journalists' cases and to this litigation had no communication or coordination with each other, directly or through counsel. No documents obtained in this litigation were used, introduced or otherwise relied upon in the Journalists' cases. Other than myself, the lawyers who worked on this litigation were different from the lawyers who worked on the Journalists' cases. USAGM's statement in its Opposition that I and my firm "ha[ve] been using the documents produced from this FOIA request to litigate the discrimination and breach of contract cases before the EEOC and Court of Federal Claims" is patently false and wholly unsupported; indeed, the fact that USAGM has not offered even a single example of the use in the Journalists' cases of any record disclosed in this FOIA litigation is testament to the baselessness of that assertion. Moreover, given the focus of the mediation on damages, not liability, the documents obtained in this litigation were not relevant to the mediation. Further, had the Journalists wanted the records at issue in this FOIA litigation, they could have requested the documents themselves either under FOIA or through discovery; they had no need of the Plaintiffs in this litigation to serve as their stalking horse. Instead, the documents obtained in this case were sought by Plaintiffs solely in pursuit of their independent journalistic mission to expose the true motivation underlying the actions undertaken by USAGM and its CEO – to use pretextual concerns about the trustworthiness of the foreign journalists as part of a broader effort to politicize VOA – and to reveal the threat to independent and objective journalism at VOA that those actions posed.

8. On April 20, 2021, in the instant FOIA litigation, my colleague Meenakshi Krishnan and I asked USAGM to focus its searches on J-1 visas and DS-2019 forms from specific custodians. That request had nothing to do with any of the Journalists' EEOC or CFC cases. *See*

Dkt. No. 41-2. To the contrary, we had spent months up to that point negotiating with USAGM counsel on the combinations of search terms and custodians most likely to yield timely and responsive productions (as reflected in the emails submitted by USAGM, *see id.*). USAGM's counsel at that time, Dana Sade, and the AUSA assigned to the case at that time, Kathleene Molen, had informed us that search terms like "Bannon" and "Trump" that were otherwise responsive to our request were likely to yield a high number of false hits and delay search, review, and production timelines. Accordingly, Plaintiffs agreed to the tailored "J1," "Visa," and "DS 2019" search terms based on USAGM's advice that those terms were least likely to hit on nonresponsive documents and artificially inflate the productions, and agreed to a narrowed set of custodians as those most involved in the J-1 visa policy. In addition, we focused on the J-1 visa policy as that topic was the core of Plaintiffs' FOIA request, an issue of significant interest to Mr. Fang's reporting, and one of Mr. Pack's actions that had received the greatest public scrutiny. Thus, the request and negotiations to which USAGM refers had nothing to do with the Journalists' cases, but rather reflected *The Intercept*'s attempt to expedite production of the documents requested in this case so that it could proceed with publication as quickly as possible, a goal that ultimately was frustrated by USAGM's slow, and incomplete, production of the requested records.

9. By May 1, 2023, eight of the VOA journalists and USAGM largely had a settlement agreement in principle for the EEOC and CFC cases, and executed the first of eight settlement agreements on June 5, 2023.

10. On May 5, 2023, my colleague, Ms. Krishnan, contacted AUSA Sam Escher about this litigation and informed him that Plaintiffs did not intend to pursue summary judgment challenges as to the adequacy of USAGM's searches and productions, or its redactions to the produced documents. That decision was reached after close consultation with Plaintiffs and

meticulous review of 12,663 pages of produced documents in the months after USAGM belatedly completed its production of missing attachments in October 2022. The decision was not influenced by, and had no relationship to, the VOA Journalists' settlement of their cases. Instead, given the important revelations gathered from USAGM's productions to date, Plaintiffs saw no need or warrant to undertake the additional expenditure of its, USAGM's or the Court's resources to continue litigation on the adequacy of USAGM's search or the scope of its redactions.

11. There is absolutely no truth to USAGM's unfounded claim in its opposition that I, or anyone else at my firm, used the instant FOIA litigation to pursue the completely separate and independent EEOC and CFC cases on behalf of VOA journalists, or that the cases were in any way related to or informed by one another. The work performed, and services provided, by our firm in this case, and in the Journalists' cases, were totally separate and distinct. Thus, compensation received by my firm for the more than three years of successfully litigating the Journalists' eight EEOC and eight CFC cases has no bearing on whether Plaintiffs should recover attorneys' fees for the more than three years of wholly separate and distinct services my firm has dedicated to successfully representing Plaintiffs in this litigation and in obtaining the disclosure of more than 12,000 pages of responsive records that provide Plaintiffs and the public with important insight into the actions taken by USAGM and CEO Michael Pack, the role of the White House with respect to those actions, and the threat those actions posed to independent and objective journalism at Voice of America. The fees ultimately paid by USAGM in the Journalists' EEOC and CFC cases were based on Plaintiffs' provision to USAGM of highly detailed attorney billing records that made abundantly clear that those fees related only to the work performed by my firm on the eight EEOC and eight CFC cases and had no relationship to and were not intended to apply to the legal services my firm has provided in this case. Nor did USAGM, in negotiating the settlements of the

Journalists' EEOC and CFC cases, ever suggest that they contemplated that the fees paid in connection with those settlements were intended to cover legal services provided in this litigation, and the settlement agreements contained no such provision. Surely, had that been USAGM's intent, their experienced counsel would have included such terms in the Journalists' settlement agreements; they did not. In short, an award of fees in this action will not result in double recovery of fees.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 12, 2024, in Washington, D.C.

_____
Burt Braverman